# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

MAXITRANSFERS LLC, a foreign limited liability company,

    Plaintiff,

v.

CARNICERIA LA ESPERANZA LLC, a domestic limited liability company, CARNICERIA LA ESPERANZA 2 LLC, a domestic limited liability company, CARNICERIA LA ESPERANZA 3 LLC, a domestic limited liability company, DAYANIRA DOTEL-PIANTINI A/K/A DAYANIRA SOTO, an individual, and MANJAR LATINO RESTAURANT BAR & GRILL LLC, a domestic limited liability company,

    Defendants.

Case No.: 2:26-cv-00099-BHH

_____/

## COMPLAINT FOR DAMAGES UNDER BREACH OF CONTRACT

Plaintiff, Maxitransfers LLC, hereby sues defendants Carniceria La Esperanza LLC, Carniceria La Esperanza 2, LLC, Carniceria La Esperanza 3, LLC, Dayanira Dotel-Piantini a/k/a Dayanira Soto, and Manjar Latino Restaurant Bar & Grill LLC, alleging as follows:

### JURISDICTION AND VENUE

1. Personal jurisdiction is proper in this court as each defendant transacts business in this state and district and each corporate defendant maintains a principal place of business in this state and district.

2. Subject matter jurisdiction is proper in this court as the parties are citizens of different states and the amount in controversy exceeds $75,000.

3. Venue is proper in this court as the defendants transacted business and engaged in the conduct complained of in this district and the corporate defendants maintain principal places of business in this state and district.

## THE PARTIES

4. Plaintiff Maxitransfers LLC is a Delaware limited liability company with its principal place of business located at 222 Las Colinas Blvd., Suite 2000N, Irving, TX 75039-5440. Its sole member is a California trust. Maxitransfers transmits cash and negotiable instruments to third-parties pursuant to specific instructions and delegates third-party companies to act as fiduciaries to facilitate interactions with customers throughout this process.

5. Defendant Carniceria La Esperanza LLC (**Carniceria 1**) is a South Carolina limited liability company with a registered agent located at, a principal place of business located at, and which may be served with process at 4192 Mill Creek Drive, North Charleston, South Carolina 29420. Upon information and belief, no member of Carniceria 1 is a citizen of the same state as Maxitransfers LLC. Carniceria 1 provides check cashing and money transmittal services to customers in South Carolina.

6. Defendant Carniceria La Esperanza 2, LLC (**Carniceria 2**) is a South Carolina limited liability company with a registered agent located at, a principal place of business located at, and which may be served with process at 1341 College Park Road, Unit H, Summerville, South Carolina 29483. Upon information and belief, no member of Carniceria 2 is a citizen of the same state as Maxitransfers LLC.

7. Defendant Carniceria La Esperanza 3, LLC (**Carniceria 3**) is a South Carolina limited liability company with a registered agent located at, a principal place of business located at, and which may be served with process at 1320 Remount Road, North Charleston, South

Carolina, 29406. Upon information and belief, no member of Carniceria 3 is a citizen of the same state as Maxitransfers LLC.

8. Defendant Dayanira Dotel-Piantini a/k/a Dayanira Soto (**Ms. Dotel-Piantini**) is an individual residing at 119 Thames Drive, Goose Creek, South Carolina 29445. Ms. Dotel-Piantini is a managing member of and registered agent for the Carniceria La Esperanza defendants.

9. Defendant Manjar Latino Restaurant Bar & Grill LLC (**Manjar Restaurant**) is a South Carolina limited liability company with a registered agent located at, a principal place of business located at, and which may be served with process at 6610 Rivers Avenue, North Charleston, South Carolina 29406. Upon information and belief, no member of Manjar Restaurant is a citizen of the same state as Maxitransfers LLC. Manjar Restaurant agreed to act as guarantor for the Carniceria La Esperanza loan.

## FACTUAL ALLEGATIONS

**I.   Failure to Remit Transferred Funds – Carniceria 1.**

10. On August 1, 2016, Maxitransfers and Carniceria 1 entered a money transmission agreement (**MTA 1**). A true and correct copy of MTA 1 is attached as **EXHIBIT A**.

11. As part of MTA 1, Maxitransfers appointed Carniceria 1, and Carniceria 1 accepted appointment, as a trustee and fiduciary for money transmissions by Maxitransfers.

12. When Carniceria 1 received funds for such a transmission from a customer, it agreed to notify Maxitransfers, who would make equivalent funds available for the customer at the designated destination.

13. Carniceria 1, meanwhile, agreed to hold the funds the customer provided in trust for Maxitransfers and deliver the transferred amount to Maxitransfers by the following Monday, Wednesday, or Friday, whichever came first.

14. Carniceria 1 further pledged as security a lien against its personal property and any proceeds thereof to Maxitransfers under MTA 1 as security for the funds held in trust. On September 15, 2023, Maxitransfers filed a UCC-1 evidencing the aforementioned security interest with the South Carolina Secretary of State. A true and correct copy of the UCC-1 Financing Statement is attached as **EXHIBIT B**.

15. Carniceria 1 began processing transactions for customers under MTA 1 shortly after the parties executed it.

16. To process a transaction, Carniceria 1 accepts customer funds plus a small service fee from a consumer visiting its store.

17. Carniceria 1 then notified Maxitransfers of the customer's request to transmit the funds to the intended recipient.

18. Maxitransfers delivered the funds to the recipient as instructed.

19. Maxitransfers complied with its obligations under MTA 1 by transmitting all funds to the intended recipients or returning the funds if the transaction did not clear.

20. However, Carniceria 1 failed to then remit to Maxitransfers all funds it received from the customer and held in trust.

21. Instead, upon information and belief, Carniceria 1 withheld some funds from Maxitransfers for transactions Maxitransfers processed at Carniceria 1 and its customers' request.

22. In the alternative, upon information and belief, Carniceria 1 failed its obligation to ensure the funds it held for Maxitransfers were deposited in Maxitransfers' designated bank accounts.

23. After Carniceria 1 failed to remit the funds owed as described above, Maxitransfers terminated MTA 1.

24. As of July 2024, Carniceria 1 still owed Maxitransfers $76,335.71 in funds for transactions Maxitransfers processed at Carniceria 1's and its customer's requests, which it did not repay.

25. Carniceria 1's failure to deliver these funds was not authorized by Maxitransfers, justified under MTA 1, or excused.

26. Maxitransfers fully performed its obligations under MTA 1.

27. All prerequisites to relief have been satisfied or excused.[1]

## II.  Failure to Remit Transferred Funds – Carniceria 3.

28. On August 29, 2023, plaintiff Maxitransfers and defendant Carniceria 3 entered a money transmission agreement (**MTA 3**).  A true and correct copy of MTA 3 is attached as **EXHIBIT D**.

29. As part of MTA 3, Maxitransfers appointed Carniceria 3, and Carniceria 3 accepted appointment, as a trustee and fiduciary for money transmissions by Maxitransfers.

30. When Carniceria 3 received funds for such a transmission from a customer, it agreed to notify Maxitransfers, who would make equivalent funds available for the customer at the designated destination.

31. Carniceria 3, meanwhile, agreed to hold the funds the customer provided in trust for Maxitransfers and deliver the transferred amount to Maxitransfers by the following Monday, Wednesday, or Friday, whichever came first.

32. Carniceria 3 further pledged as security a lien against its personal property and any proceeds thereof to Maxitransfers under MTA 3 as security for the funds held in trust.  On February

---

[1] Carniceria 2 also executed a money transmission agreement with Maxitransfers and pledged as security a lien against its personal property and any proceeds thereof to Maxitransfers as security for the funds held in trust.  Breach of Carniceria 2's MTA is not at issue, but Maxitransfers attaches a true and correct copy of the UCC-1 Financing Statement filed by Maxitransfers on February 12, 2024 as **EXHIBIT C** for ease of reference.

5

12, 2024, Maxitransfers filed a UCC-1 evidencing the aforementioned security interest with the South Carolina Secretary of State. A true and correct copy of the UCC-1 Financing Statement is attached as **EXHIBIT E**.

33. Carniceria 3 began processing transactions for customers under MTA 3 shortly after the parties executed it.

34. To process a transaction, Carniceria 3 accepts customer funds plus a small service fee from a consumer visiting its store.

35. Carniceria 3 then notified Maxitransfers of the customer's request to transmit the funds to the intended recipient.

36. Maxitransfers delivered the funds to the recipient as instructed.

37. Maxitransfers complied with its obligations under MTA 3 by transmitting all funds to the intended recipients or returning the funds if the transaction did not clear.

38. However, Carniceria 3 failed to then remit to Maxitransfers all funds it received from the customer and held in trust.

39. Instead, upon information and belief, Carniceria 3 withheld some funds from Maxitransfers for transactions Maxitransfers processed at Carniceria 3 and its customers' request.

40. In the alternative, upon information and belief, Carniceria 3 failed its obligation to ensure the funds it held for Maxitransfers were deposited in Maxitransfers' designated bank accounts.

41. After Carniceria 3 failed to remit the funds owed as described above, Maxitransfers terminated MTA 3.

42. As of July 2024, Carniceria 3 still owed Maxitransfers $19,607.24 in funds for transactions Maxitransfers processed at Carniceria 3's and its customer's requests, which it did not repay.

43. Carniceria 3's failure to deliver these funds was not authorized by Maxitransfers, justified under MTA 3, or excused.

44. Maxitransfers fully performed its obligations under MTA 3.

45. All prerequisites to relief have been satisfied or excused.

**III.    Failure to Repay Sums Loaned.**

46. Defendants previously fell behind on transferring all sums to Maxitransfers under their respective money transmission agreements, and on or about February 9, 2024, defendants Carniceria 1, Carniceria 2, Carniceria 3, and Ms. Dotel-Piantini executed a secured promissory note (**Note**) payable to plaintiff Maxitransfers. A true and correct copy of the Note is attached as **EXHIBIT F**.

47. Defendants Carniceria 1, Carniceria 2, Carniceria 3, Ms. Dotel-Piantini, and Manjar Restaurant concurrently executed a security agreement (**Security Agreement**) granting a lien against various assets to secure the promise to pay under the Note. A true and correct copy of the Security Agreement is attached as **EXHIBIT G**.

48. Ms. Dotel-Piantini signed these agreements on defendants' behalf.

49. Manjar Restaurant then executed a personal guaranty of its co-defendants' repayment obligations under the Note (**Guaranty**). A true and correct copy of the Guaranty is attached as **EXHIBIT H**.

50.     Under the Note, defendants Carniceria 1, Carniceria 2, Carniceria 3, and Ms. Dotel-Piantini agreed to pay Maxitransfers $295,614.38 in fourteen equal payments of $20,000.00 and a final payment of $15,614.38, beginning on March 15, 2024.

51.     Defendants Carniceria 1, Carniceria 2, Carniceria 3, and Ms. Dotel-Piantini agreed they would be in default under the Note if they failed to pay any sums by the dates they were due.

52.     Defendants Carniceria 1, Carniceria 2, Carniceria 3, and Ms. Dotel-Piantini further agreed they would be in default under the Note if they materially breached MTA 1, MTA 3, or the Security Agreement or were found bankrupt or insolvent.

53.     In the event of default, defendants Carniceria 1, Carniceria 2, Carniceria 3, and Ms. Dotel-Piantini agreed Maxitransfers could accelerate the total amount owed under the Note.

54.     In the event of default, defendants Carniceria 1, Carniceria 2, Carniceria 3, and Ms. Dotel-Piantini further agreed Maxitransfers could, at its discretion, transfer or register in its own name any collateral they pledged and sell it to recover the amounts due under the Note and Security Agreement.

55.     Manjar Restaurant agreed under the Guaranty to pay its co-defendants' obligations under the Note in the event they defaulted on their obligations.

56.     Defendants Carniceria 1, Carniceria 2, Carniceria 3, and Ms. Dotel-Piantini breached MTA 1 and MTA 3, therefore also defaulting under the Note and Security Agreement.

57.     To date, defendants Carniceria 1, Carniceria 2, Carniceria 3, and Ms. Dotel-Piantini owe $207,980.35 under the Note.

58.     Manjar Restaurant agreed to guarantee defendants Carniceria 1, Carniceria 2, Carniceria 3, and Ms. Dotel-Piantini obligations under the Note and Security Agreement.

59. Manjar Restaurant further agreed Maxitransfers may demand repayment from it even without a similar demand to defendants Carniceria 1, Carniceria 2, Carniceria 3, and Ms. Dotel-Piantini.

60. Manjar Restaurant has not tendered or delivered the funds due under the Note, Security Agreement, and Guaranty.

61. The defendants' failure to deliver the funds due under the Note was not authorized by Maxitransfers, justified under the parties' Note, Security Agreement, and Guaranty, or excused.

62. Maxitransfers fully performed its obligations under the Note, Security Agreement, and Guaranty.

63. All prerequisites to relief have been satisfied or excused.

**IV.   Breach of Settlement Agreement.**

64. Following defendants' failure to deliver the above-described funds owed to Maxitransfers, Maxitransfers initiated litigation in this Court seeking repayment of all sums owed in this District of South Carolina, Case No. 2:24-cv-04070-BHH.

65. To resolve the amounts owed to Maxitransfers, all defendants entered into a confidential settlement agreement and release with Maxitransfers, signed by the parties on January 8, 2025. A true and correct copy of the agreement (the **Settlement Agreement**) is attached as **EXHIBIT I**.

66. The Settlement Agreement established a payment plan allowing defendants to repay the sums owed to Maxitransfers for transmissions not yet repaid under the MTAs, Note, Security Agreement, and Guaranty. *See id.*

67. Defendants agreed to repay Maxitransfers $304,000.00 by making a down payment of $40,000.00 and then the remaining $264,000.00 via payments of $11,000.00 beginning on

9

December 1, 2024 and each month thereafter until all sums (stemming from amounts previously owed under the MTAs, Note, Security Agreement, and Guaranty) were fully repaid. *See id.* ¶ 2.

68. Defendants further agreed they would be in breach of the Settlement Agreement if they failed to tender any monthly payment when due. *See id.* ¶ 2(b)(i).

69. Defendants also agreed and entered into a stipulation to entry of judgment (the **Stipulation to Judgment**) as a part of the Settlement Agreement, which Maxitransfers agreed to hold in trust pending receipt of the down payment and monthly payments. *See id.* ¶¶ 2(c). A true and correct copy of the Stipulation to Judgment is attached as **EXHIBIT J**.

70. In the event of a breach, the parties agreed Maxi could "file and seek enforcement of the Stipulation to Judgment." *See* **Ex. I** ¶ 1(c)(i).

71. Defendants made part of the down payment due under the Settlement Agreement and certain subsequent payments, totaling $131,763.44.

72. Defendants failed to make all payments owed, which, as of the date of this complaint totals $62,236.56, in breach of the Settlement Agreement.

73. Maxitransfers made good faith efforts on multiple occasions to resolve defendants' Settlement Agreement breaches and/or to renegotiate the terms to assist them with repayment to no avail. Defendants still failed to deliver all funds owed to Maxitransfers.

74. Despite Maxitransfers' efforts to resolve the amounts owed with defendants, she failed to respond to Maxitransfers' outreach and to make all payments owed.

75. As of the date of this complaint, defendants owe Maxitransfers $172,236.89 under the Settlement Agreement.

76. Defendants' failure to deliver the funds due under the Settlement Agreement, the MTAs, the Note, the Security Agreement, and/or the Guaranty was neither authorized by Maxitransfers, justified under these contracts, nor excused.

77. Maxitransfers performed its obligations under the Settlement Agreement and all other agreements with defendants.

78. Maxitransfers performed all conditions precedent to bringing this action, or any such conditions precedent have been satisfied, excused, or waived by defendants.

79. MTA 1, MTA 3, the Note, the Security Agreement, the Guaranty, the Settlement Agreement, and the Stipulation to Judgment provide that defendants shall pay all attorneys' fees and costs incurred by plaintiff Maxitransfers in this action.

80. Maxitransfers employed the law firm of Akerman LLP to represent its interests herein and became obligated to pay its attorneys a reasonable fee for their services.

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

81. Maxitransfers incorporates the allegations in paragraphs 1 through 80 above as if fully set forth herein.

82. Maxitransfers and defendants entered into a valid and enforceable written contract entitled Confidential Settlement Agreement and Release, as specified above. *See* **Ex. I**.

83. By nature of their relationship, defendants owed contractual duties under the Settlement Agreement to Maxitransfers, as well as under the MTAs, the Note, the Security Agreement, and the Guaranty.

84. Through their conduct described herein, defendants materially breached the Settlement Agreement contract by, *inter alia*, withholding or failing to deliver funds lawfully due to Maxitransfers under the Settlement Agreement (for repayment of sums owed under the MTAs,

11

the Note, the Security Agreement, and the Guaranty) and on the monthly schedule as agreed by the parties in the Settlement Agreement.

85. Defendants' breaches were without lawful justification.

86. Maxitransfers has performed all contractual obligations under the Settlement Agreement, and all other contracts with defendants, or was excused from performing its obligations because of defendants' material breach of the Settlement Agreement contract.

87. As a direct and proximate result of all defendants' breaches of the Settlement Agreement contract, Maxitransfers has been damaged.

88. Maxitransfers is entitled to $172,236.89 in actual damages and any further consequential damages as a result of defendants' breaches.

89. Maxitransfers is further entitled to attorneys' fees and costs under the Settlement Agreement.

## SECOND CAUSE OF ACTION
## ENFORCEMENT OF STIPULATION TO JUDGMENT

90. Maxitransfers incorporates the allegations in paragraphs 1 through 80 above as if fully set forth herein.

91. As a part of the Settlement Agreement, the parties agreed defendants would execute the Stipulation to Judgment, which Maxitransfers agreed to hold in trust and enforce upon defendants' "breach of any provision" of the Settlement Agreement. *See* **Ex. I** ¶ 2(c)(i).

92. Defendants executed the Stipulation to Judgment, incorporated as and attached to the Settlement Agreement, on January 8, 2025. *See* **Ex. J**.

93. The Settlement Agreement allows Maxitransfers to enforce the Stipulation to Judgment upon a breach for failure to make monthly payments, as Ms. Dotel-Piantini has done here. *See* **Ex. I** ¶ 2(c).

94. As part of the Stipulation to Judgment, defendants admit their breach and default under the Settlement Agreement, MTAs, Note, Security Agreement, and Guaranty, and they waive all defenses, counterclaims, or rights to interpose an answer in this action. *See* **Ex. J** ¶¶ 1–9, 14.

95. Defendants further agreed "to foreclosure of the liens securing Agent's performance under MTA 1, MTA 3, the Note, the Security Agreement, and the Guaranty and the sale of the underlying assets to satisfy a judgment entered on this stipulation." *Id.* ¶ 13.

96. Maxitransfers now seeks enforcement of the Stipulation to Judgment by this Court and is entitled to judgment in Maxitransfers' favor in the current amount due and owing to Maxitransfers under the Settlement Agreement, which totals $172,236.89 as of the date of this complaint filing. *See generally id.* ¶ 8.

97. Maxitransfers is also entitled to a judgment including "all reasonable attorneys' fees and expenses Maxitransfers incurred to date in enforcing its claims" against defendants under the Settlement Agreement and MTA 1, MTA 3, the Note, the Security Agreement, and the Guaranty. *See id.* ¶ 10.

98. Maxitransfers is additionally entitled to a judgment including "all reasonable attorneys' fees and expenses Maxitransfers" incurs in "enforcing its rights under [the] Stipulation to Entry of Judgment" against Ms. Dotel-Piantini. *See id.* ¶ 12.

99. Maxitransfers is entitled to pre- and post-judgment interest at the applicable statutory rate as agreed in the Stipulation to Judgment. *See id.* ¶ 7.

### THIRD CAUSE OF ACTION
### DECLARATORY JUDGMENT

100. Maxitransfers incorporates the allegations in paragraphs 1 through 80 above as if fully set forth herein.

101. Through their conduct described herein including, *inter alia*, withholding or failing to deliver funds lawfully due to Maxitransfers under the Settlement Agreement and the Note, defendants Carniceria 1, Carniceria 2, Carniceria 3, and Ms. Dotel-Piantini are in default under the Settlement Agreement, Note, and Security Agreement.

102. Through its conduct described herein including, *inter alia*, withholding or failing to deliver funds lawfully due to Maxitransfers under the Settlement Agreement and the Guaranty, Manjar Restaurant is in default under the Settlement Agreement and the Guaranty.

103. Defendants' breaches were without lawful justification.

104. Defendants' breaches entitle plaintiff Maxitransfers to, at its discretion, garnish, foreclose, transfer, or register in its own name the personal and business property defendants pledged in the Note, Security Agreement, and Guaranty, as well as in the Stipulation to Judgment, and sell it to recover the amounts due, as the parties agreed in the Stipulation to Judgment.

105. Plaintiff Maxitransfers seeks a declaration of its right to garnish, foreclosure, transfer, or register in its own name the personal and business property defendant Ms. Dotel-Piantini pledged and sell it to recover the amounts due totaling $172,236.89, as the parties agreed in the Stipulation to Judgment.

**FOURTH CAUSE OF ACTION**
**FORECLOSURE OF LIEN – ALL DEFENDANTS**

106. Plaintiff Maxitransfers incorporates by reference all previous allegations of its complaint as if fully set forth herein.

107. Plaintiff Maxitransfers maintains a valid, priority lien against the assets under the Note, Security Agreement, and Guaranty that is senior to the defendants' interests, if any.

108. Defendants breached their obligations under the Note, Security Agreement, Guaranty, and Settlements Agreement, and the full amounts thereunder are immediately due and payable.

109. Plaintiff was damaged by these breaches by defendants.

110. Defendants collectively owe plaintiff Maxitransfers $172,236.89 under the Note, Security Agreement, Guaranty, and Settlements Agreement, along with such other interest, attorney's fees, and costs which continue to accrue.

111. As a result of the defendants' default under the Note, Security Agreement, Guaranty, and Settlements Agreement, plaintiff Maxitransfers is entitled to foreclose its liens on the defendants' assets pledged under the Note, Security Agreement, and Guaranty, which are located in Charleston and Berkeley Counties, South Carolina, specifically the business assets located at the following business locations:

   a. 6610 Rivers Avenue, North Charleston, South Carolina 29406;

   b. 1341 College Park Road, Unit H, Summerville, South Carolina 29483; and

   c. 1320 Remount Road, North Charleston, South Carolina, 29406.

112. Defendants own, possess, or may claim an interest in the assets pledged.

## REQUEST FOR RELIEF

113. WHEREFORE, Plaintiff, Maxitransfers LLC, demands:

   a. Entry of judgment against defendants Carniceria La Esperanza LLC, Carniceria La Esperanza 2, LLC, Carniceria La Esperanza 3, LLC, Dayanira Dotel-Piantini a/k/a Dayanira Soto, and Manjar Latino Restaurant Bar & Grill LLC, and award Maxitransfers all requested damages including actual damages in the amount of $172,236.89, in addition to any and all further damages provided for by law—

  including compensatory, consequential, nominal, and general—caused by defendnats' actions described herein and as the parties agreed in the Stipulation to Judgment;

b. Issue a declaration of plaintiff Maxitransfers' right to foreclosure, transfer, or register in its own name the personal and business property defendants pledged and sell said property to recover the amounts due, as the parties agreed in the Stipulation to Judgment;

c. Award Maxitransfers all pre- and post-judgment interest allowed by law at the applicable statutory rate, as the parties agreed in the Stipulation to Judgment;

d. Award Maxitransfers attorneys' fees and costs allowed by law, including all fees and costs incurred in pre-litigation enforcement of its right to repayment and incurred through this action, as the parties agreed in the Stipulation to Judgment; and

e. Award Maxitransfers such further relief the Court deems just and equitable.

Dated: January 9, 2026    AKERMAN LLP

           By: */s/ Chadwick Devlin*
             Chadwick Devlin, Esq.
             South Carolina Bar No. 12390
             Primary Email: chadwick.devlin@akerman.com
             1251 Avenue of the Americas, 37th Floor
             New York, NY 10020
             (212) 880-3800

             *Attorney for Maxitransfers LLC*